# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
### BOWLING GREEN DIVISION

**CIVIL ACTION NO: 1:04CV-066-M**

**JOHN W. HUSKEY and**
**LIDDY I. HUSKEY**                                                        **PLAINTIFFS**

**V.**

**ALLEN COUNTY FARMERS SERVICES, INC.**
**d/b/a SOUTHERN STATES FARM SUPPLY**
**and**
**KEYSTONE CONSOLIDATED INDUSTRIES, INC.**
**d/b/a/ KEYSTONE STEEL & WIRE**                                       **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion by Defendant, Keystone Consolidated Industries, Inc., for summary judgment as to Plaintiffs' claims asserted against it [DN 26]. Also before the Court is a motion to file an amended answer [DN 32] by Keystone Consolidated Industries, Inc.  Fully briefed, these matters stands ripe for decision.  For the following reasons, Defendant's motions are **DENIED**.

### I. BACKGROUND

This case arises out of an alleged injury to Plaintiff, John W. Huskey ("Mr. Huskey"), on or about May 14, 2003.  Mr. Huskey, an over-the-road truck driver, was purportedly injured while steel wire was being unloaded at the principal place of business of Defendant, Allen County Farm Services, Inc. ("Allen County Farmers Services").  Mr. Huskey's Complaint alleges that Allen County Farmers Services negligently unloaded the steel wire

fencing, causing him injury.  In the alternative, Mr. Huskey alleges that the other Defendant, Keystone Consolidated Industries, Inc. ("Keystone"), negligently loaded the steel wire fencing, causing him injury.[1]  Mr. Huskey now seeks damages against the Defendants in the amount of $5,000,000 for past and future medical expenses, past and future pain and suffering, loss of income, lost wages, permanent impairment of his power and ability to earn money, and future complications.  Mrs. Huskey also seeks damages in the amount of $1,000,000 from the Defendants for loss of consortium.  As the parties are diverse, the amount in controversy is in excess of $75,000, and the alleged injuries occurred in Allen County, Kentucky, the Court has jurisdiction over this matter.

The Huskeys filed their Complaint on April 19, 2004.  Prior to that date, on February 26, 2004, Keystone filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Wisconsin (the "Bankruptcy Court").  On May 17, 2004, Keystone first alerted the Court and the other parties to this litigation of its bankruptcy petition by filing a "Suggestion of Bankruptcy." On December 16, 2004, Keystone filed a motion in this Court to stay the proceedings pending the resolution of the bankruptcy action.  The Court granted Keystone's motion on January 12, 2005.  The Court also requested the parties to file status reports as to the bankruptcy proceeding.  Specifically, on January 27, 2006, the Court issued an Order which stated that by May 1, 2006, "the parties shall file with the Court a status report regarding the

---

[1]The two Defendants have filed cross-claims against one another.

bankruptcy proceedings involving Defendant Keystone.  Should the bankruptcy stay be lifted prior to that date, the parties shall contact the Courtroom Deputy...to schedule this action for a status conference."

On April 10, 2006, Keystone filed a status report with the Court as to its action in the Bankruptcy Court which stated,

> The Debtor's reorganization Plan was approved on August 10, 2005 and was made effective on August 31, 2005.  The final resolution of all objected claims will likely not be concluded until late Spring, 2006.  In September 2005, an inquiry was made by undersigned counsel regarding the status of the bankruptcy proceeding.  Undersigned counsel was informed that the bankruptcy would not be finally concluded until Spring of 2006.  Counsel for Keystone Consolidated Industries construed this information to mean that the stay of these proceedings would not be lifted until that time and, in fact, no Order lifting the automatic stay has been received by undersigned counsel.

On June 15, 2006, Keystone submitted another status report to the Court which stated,

> The Debtor's reorganization Plan was approved on August 10, 2005 and was made effective on August 31, 2005 with Notice of the final effective date on September 1, 2005.  Bankruptcy counsel for Keystone has advised undersigned counsel that this case can proceed and that, pursuant to the terms of the approved Plan, the automatic stay was lifted as of its effected date and no Order lifting the automatic stay would be issued.

On July 31, 2006, Keystone filed this motion for summary judgment.  In its motion, Keystone argues that this action was filed in violation of the automatic stay and is void.  Plaintiffs argue that Keystone waived its rights under the Bankruptcy Act by intentionally misleading the parties.

## II. STANDARD OF REVIEW

In order to grant a motion for summary judgment, the Court must find that the

pleadings, together with the depositions, interrogatories, and affidavits, establish that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e) (emphasis added). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. It is against this standard that the Court reviews the following facts.

### III. DISCUSSION

Pursuant to 11 U.S.C. § 362(a)(1), upon the filing of a bankruptcy petition, an automatic stay comes into place, which prevents, among other things, the "commencement...of a judicial...action or proceeding against the debtor that was or could

have been commenced before the commencement of the [bankruptcy] case." In <u>Easley v.</u>
<u>Pettibone Mich. Corp.</u>, 990 F.2d 905, 907 (6th Cir. 1993), the court considered the issue of
"whether an action filed in violation of an automatic stay imposed pursuant to 11 U.S.C. §
362(a) is void or voidable." Although the <u>Easley</u> court noted that the majority of circuits
have concluded that actions taken in violation of an automatic stay are void, it took the
minority position. The court held that actions taken in violation of a stay are invalid and
voidable and shall be voided absent limited equitable circumstances. <u>Id</u>. at 911. The court
further held "that only where the debtor unreasonably withholds notice of the stay and the
creditor would be prejudiced if the debtor is able to raise the stay as a defense, or where the
debtor is attempting to use the stay unfairly as a shield to avoid an unfavorable result, will
the protections of section 362(a) be unavailable to the debtor." Applying this rubric, the
court concluded,

> [D]efendant in this case did not behave unreasonably and the equitable
> exception should not apply. As previously pointed out, as soon as defendant
> was made aware of plaintiffs' lawsuit, it notified plaintiffs that their action was
> in violation of the automatic stay. Defendant did nothing to lull plaintiffs into
> believing it would not rely on the stay. Indeed, defendant moved to have
> plaintiffs' action declared null and void after the thirty-day grace period for
> filing had expired. Although plaintiffs will be prejudiced because they have
> lost their products liability claim against defendant, this is because they failed
> to refile their action within the thirty-day grace period afforded by 11 U.S.C.
> § 108(c).[2]

In this case, Defendant Keystone acted inconsistently with an intention to use the

---

[2]11 U.S.C. § 108 provides that in the event an applicable limitations period has not expired on the date a
bankruptcy petition is filed, then that applicable period of limitations does not expire until that latter of "(1) the end
of [the limitations] period including any suspension of such period occurring on or after the commencement of the
case; or (2) 30 days after notice of the termination of the expiration of the stay."

automatic stay as a defense to this action. The limited equitable circumstances, which serve to validate otherwise invalid actions taken during a stay, are present here. Keystone took actions which misled the Plaintiffs. Although Keystone gave notice of its pending bankruptcy immediately upon being served with the Complaint in this case, it did not seek dismissal. Instead, it proceeded with the litigation as if there was no defect with the Plaintiffs' Complaint. Keystone filed an Answer to the Complaint. Keystone's Answer stated that it was currently in bankruptcy, however, the Answer did not indicate that Keystone was asserting a violation of the stay as a defense to the action. To the contrary, instead of filing a motion to dismiss, Keystone filed a Cross-claim against Allen County Farm Services. Keystone participated in a joint planning meeting and submitted a joint litigation plan. Keystone exchanged initial disclosures. Keystone sought a stay in the proceedings in December of 2004 but still, it did not seek dismissal, nor did it give any indication that it intended to do so. In short, Keystone lulled Plaintiffs into believing that it would not rely on the stay to invalidate this action.

The Magistrate Judge instructed Keystone's counsel to provide updates as to the progression of the Bankruptcy action. To this end, Keystone's counsel provided a report to the Court on April 13, 2006, that the reorganization Plan had been approved in August of 2005, and made effective on August 31, 2005. The report continued to state that the final resolution of all objected claims would likely not be concluded until late Spring of 2006. Keystone' counsel construed this information "to mean that stay of these proceedings would not be lifted [until a later time]...and no Order lifting the automatic stay has been received

by undersigned counsel." On June 16, 2006, Keystone filed another status report with the Court. Therein, counsel advised that the final effective date of the reorganization Plan was September 1, 2005, and that pursuant to the terms of the Plan, the automatic stay was lifted as of its effective date and no separate order lifting the stay would be issued.

Keystone now argues that the Plaintiffs had from September 1, 2005, until October 26, 2005, to properly file this action before the statute of limitations expired. However, Plaintiffs were not aware of this until well after the fact. Keystone argues that the Plaintiffs should have been tracking this date, however, the Plaintiff had no reason to believe that Keystone intended to seek dismissal of this case based on the automatic stay. All indications were to the contrary. Furthermore, the Magistrate charged Keystone's counsel with the responsibility to inform the Court and the parties as to the lifting of the stay. Keystone argues that its counsel herein had no involvement in the bankruptcy and suggests that its misinformation should be excused. The Court accepts counsel's statement as an explanation for the untimely notice of the lifting of the stay, but Keystone should not be allowed to use it to its advantage. Instead, under these circumstances, equity demands that the protections of section 362(a) not be available to Defendant Keystone.

Finally, Keystone's reliance on <u>Raikes v. Langford</u>, 701 S.W.2d 142, 145 (Ky. Ct. App. 1985) is misplaced. Keystone cites <u>Raikes</u> for the proposition that Plaintiffs' Complaint was void. However, "[b]ankruptcy is an area of federal concern, and federal law preempts state law to the contrary." <u>Kelvin v. Avon Printing Co. Inc.</u>, No. 94-1999, 1995 WL 734481, at *6 (6th Cir. Dec. 11, 1995).

## IV. CONCLUSION

For the foregoing reasons, Keystone's motions for Summary Judgment [DN 26] and

for Leave to File an Amended Answer [DN 32] are **DENIED.**

cc: counsel of record
04cv-066Huskey